UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-v-

NELSON AGRAMONTE-MINAYA,

Defendant.

21 Cr. 661 (PAE)
24 Civ. 8681 (PAE)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

This decision resolves a *pro se* motion by defendant Nelson Agramonte-Minaya under 28 U.S.C. § 2255 to vacate his conviction (via guilty plea) and his sentence. *See* Dkt. 136 (the "Motion"). For the reasons that follow, the Court denies the motion.

I.  **Background**

   A.  **Indictment and Guilty Plea**

Indictment 21 Cr. 661 (PAE) was returned on November 1, 2021, in one count. Dkt. 9. It charged Agramonte-Minaya and three others with participating in a conspiracy to distribute, and to possess with intent to distribute, at least five kilograms containing mixtures and substances containing a detectable amount of cocaine, in violation of 21 U.S.C.§§ 846 and 841(b)(1)(A). *See id.* The Complaint, based on which three of the four defendants had earlier been arrested, detailed a scheme in which large volumes of cocaine were shipped from Puerto Rico to the United States, with the cocaine concealed in large metal cylinders, such as lawn rollers. *See generally* Dkt. 1; *id.* ¶ 5(n) (describing recovery of 460 bricks of cocaine, each weighing an estimated one kilogram).

On June 3, 2022, Agramonte-Minaya pled guilty, pursuant to a written plea agreement, to a lesser-included offense under Count One, which charged him with conspiring to distribute and possess with intent to distribute at least 500 grams of mixtures and substances containing a detectable amount of cocaine. *See* Dkt. 57 ("6/3/22 Tr.") at 3, 16–20; Dkt. 65 (presentence report) ("PSR") ¶ 4. The plea agreement calculated an advisory Sentencing Guidelines range of between 210 and 262 months' imprisonment, with an offense level of 37 based on the parties' agreement that the offense involved 450 kilograms or more of cocaine, and a criminal history category of I. *See* PSR ¶ 4

Agramonte-Minaya was represented at the plea hearing, as he was at his sentencing, by Anthony Cecutti, Esq.

**B.      Sentencing**

Sentencing was held November 17, 2022. *See* Dkt. 84 ("11/17/22 Tr."); Dkt. 82 ("Judgment"). The Court, with the PSR, adopted the plea agreement's advisory Guidelines calculations. *See* 11/17/22 Tr. at 5. The Court, following an extended analysis of the 18 U.S.C. § 3553(a) factors, imposed a sentence principally of 108 months' imprisonment. *Id.* at 38.

The Court found the interests in just punishment and promoting respect for the law to weigh heavily, given Agramonte-Minaya's participation in transporting a vast quantity of cocaine—two 460-kilogram shipments—into the United States. *See id.* at 24–27. The Court noted that while Agramonte-Minaya had been a follower rather than a leader in the offense, he had been actively involved in it, taking actions in furtherance both in Puerto Rico and New Jersey, including sealing up the black lawn rollers in which the cocaine was transported, and causing them to be distributed to his girlfriend's house in New Jersey. *See id.* at 27–28. As a matter of just punishment, the Court stated, the scale of the scheme demanded a sentence above

the 60-month mandatory minimum urged by defense counsel. *See id.* at 28. However, the Court found, other sentencing factors (general and specific deterrence, and public protection) did not demand a sentence above the mandatory minimum. *See id.* at 29–30. Agramonte-Minaya, the Court noted, did not have a prior criminal record, and there was sound reason to conclude that the experience of being prosecuted, and separated from his family, had gotten his attention so as to deter him from recidivating. *See id.*

The Court also took into account mitigating factors. These included Agramonte-Minaya's acceptance of responsibility, as reflected in his prompt guilty plea, *see id.* at 30–31; his positive work experience and courses taken while in presentencing custody, *see id.* at 31–32; and numerous letter-testimonials to positive aspects of his history and character, including his devotion to family, work ethic, and remorse, *see id.* at 32–36. The Court also treated the "terrible" conditions in which Agramonte-Minaya had been held prior to sentencing as mitigating. *See id.* at 36–37. But for those conditions, the Court stated, it would have imposed a sentence somewhat above the 120-month sentence recommended by the Probation Department. *See id.* at 36-37.[1]

## C. Appeal

Agramonte-Minaya's appellate counsel, Daniel M. Perez, Esq., initially filed a brief in the Second Circuit pursuant to *Anders v. California*, 386 U.S. 738 (1967), stating that upon review of the record, he had not found any nonfrivolous issues to raise on appeal. *See United States v. Agramonte-Minaya*, No. 22-3071 (2d Cir. July 1, 2024), ECF No. 46. Later, appellate counsel filed a supplemental *Anders* brief, concluding that there was a non-frivolous argument that the 2-level premises enhancement of U.S.S.G. § 2D1.1(b)(12) had incorrectly been applied,

---

[1] The Government recommended a sentence of at least 144 months imprisonment. *See id.* at 36.

3

...

but that such an argument was precluded by the plea agreement's appellate waiver provision. *See Agramonte-Minaya*, No. 22-3071, Dkt. 65.

On July 1 2024, the Second Circuit issued a two-paragraph order granting the *Anders* motion, dismissing Agramonte-Minaya's appeal "as to those components of the judgment covered by the valid waiver of appeal," and affirming "the balance of the judgment." *See Agramonte-Minaya*, No. 22-3071, Dkt. 88.

### D. Section 2255 Motion

On October 28, 2024, Agramonte-Minaya, *pro se*, filed the instant motion pursuant to § 2255, alleging ineffective assistance of counsel by his trial counsel, Cecutti, in connection with his guilty plea. *See* Dkt. 136.

On November 21, 2024, the Court ordered Cecutti to submit an affidavit addressing the Motion's allegations of ineffective assistance of counsel. *See* Dkt. 139. On December 27, 2024, Cecutti submitted a detailed affidavit addressing, and as explained below, refuting, each of Agramonte-Minaya's claims. *See* Dkt. 142 ("Cecutti Aff.").

On January 16, 2025, the Government filed an opposition to Agramonte-Minaya's motion. *See* Dkt. 143 ("G. Mem."). On January 27, 2025, Agramonte-Minaya filed a reply. Dkt. 144.

## II. Discussion

### A. Governing Legal Standards

#### 1. Section 2255 Motions

Section 2255 enables a prisoner sentenced by a federal court to petition that court to vacate, set aside, or correct a sentence "imposed in violation of the Constitution or laws of the United States" or "otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Relief under § 2255 is generally available "only for a constitutional error, a lack of jurisdiction in the

sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)). "Because collateral challenges are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010) (citation omitted).

### 2. Ineffective Assistance of Counsel

A claim of ineffective assistance of counsel, however, is a permissible basis for bringing a § 2255 petition. The Sixth Amendment guarantees a criminal defendant the right "to effective assistance from his attorney at all critical stages in the proceedings," which includes the plea-bargaining process. *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013); *see Lafler v. Cooper*, 566 U.S. 156, 162 (2012); *Kovacs v. United States*, 744 F.3d 44, 49 (2d Cir. 2014).

A defendant claiming ineffective assistance must establish that (1) his "counsel's performance was deficient" and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under *Strickland*'s first prong, defense counsel is expected to give the client "professional advice on [the] crucial decision of whether to plead guilty," to communicate the terms of a plea offer, and, usually, to "inform the defendant of the strengths and weaknesses of the case against him, as well as the alternative sentences to which he will most likely be exposed." *Purdy v. United States*, 208 F.3d 41, 44–45 (2d Cir. 2000). Defense counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. "[A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* The

5

"ultimate decision whether to plead guilty," however, "must be made by the defendant." *Purdy*, 208 F.3d at 45.

With respect to *Strickland*'s second prong, a defendant who has pled guilty must show "that there is a reasonable probability that, but for counsel's errors, [he] would not have pleaded guilty and would have insisted on going to trial." *Lafler*, 566 U.S. at 163 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). In addition, a defendant may show prejudice by showing that he would have received and accepted a guilty plea with a lower sentence but for counsel's errors. *See Missouri v. Frye*, 566 U.S. 134, 147–48 (2012); *Lafler*, 566 U.S. at 174. Put differently, a defendant must show that "the outcome of the plea process would have been different with competent advice." *Lafler*, 566 U.S. at 163; *see also Hill*, 474 U.S. at 59 (asking "whether counsel's constitutionally ineffective performance affected the outcome of the plea process").

### B.  Agramonte-Minaya's Theories of Ineffective Assistance

Agramonte-Minaya raises three arguments in support of his claim of ineffective assistance of counsel. First, and centrally, he argues that his trial counsel, Cecutti, was ineffective in inducing him to enter into a Plea Agreement that contained the 2-level premises enhancement. Motion at 2. In support, he claims that there was not a factual basis for that enhancement; that trial counsel had not investigated whether there was such a factual basis; and that trial counsel had simply advised Agramonte-Minaya to stipulate to the enhancement. *See id.* at 2–3. Agramonte-Minaya noted that, had there not been a premises enhancement, his advisory Guidelines range would have been 168 to 210 months' imprisonment, rather than 210 to 262 months' imprisonment. *See id.* at 4. Second, Agramonte-Minaya claims that trial counsel did not explain to him the significance of the plea agreement's appellate waiver provision, which barred him from appealing sentences below 262 months' imprisonment. *See id.* at 7. Third, he

6

argues that, had he been properly advised, he might have "negotiated a more favorable plea without the premises enhancement or pursue[d] other options, such as going to trial." *Id.* at 5.

Because Agramonte-Minaya's claims are unsupported by the record and applicable law, the Court finds that habeas relief is not merited under any of his theories.

### 1. The Premises Enhancement

Agramonte-Minaya first contends that trial counsel was ineffective in not resisting the 2-level premises enhancement of U.S.S.G. § 2D1.1(b)(12). That enhancement applies "[i]f the defendant maintained a premises for the purposes of manufacturing or distributing a controlled substance." U.S.S.G. § 2D1.1(b)(12). According to the relevant application note:

> Subsection (b)(12) applies to a defendant who knowingly maintains a premises (*i.e.*, a building, room, or enclosure) for the purpose of manufacturing or distributing a controlled substance, including storage of a controlled substance for the purpose of distribution. Among the factors the court should consider in determining whether the defendant "maintained" the premises are (A) whether the defendant held a possessory interest in (*e.g.*, owned or rented) the premises and (B) the extent to which the defendant controlled access to, or activities at, the premises. Manufacturing or distributing a controlled substance need not be the sole purpose for which the premises was maintained, but must be one of the defendant's primary or principal uses for the premises, rather than one of the defendant's incidental or collateral uses for the premises. In making this determination, the court should consider how frequently the premises was used by the defendant for manufacturing or distributing a controlled substance and how frequently the premises was used by the defendant for lawful purposes.

U.S.S.G. § 2D1.1 App. Note 17.

This standard is easily met here by the facts set out in the PSR—which Agramonte-Minaya, at sentencing, agreed were accurate. *See* 11/17/22 Tr. at 4. These facts concerned a multi-unit residence in New Jersey. *See* PSR ¶ 21. On September 29, 2021, three of the defendants were present in or around the residence when a van driven by defendant Jorge Aponte-Guzman pulled up next to it. *See id.* ¶¶ 21–22. Another defendant, Carlos Maisonet-Lopez, walked from behind the residence and came to the driver's side of the car, talked to

Aponte-Guzman, and then went to the rear of the van. *See id.* Meanwhile, Agramonte-Minaya stood near the door of a basement-level unit of the residence. *See id.* He was wearing gloves. *See id.* ¶ 23. A search of the van revealed pallets containing 10 black lawn rollers with a total of 460 bricks of cocaine. *See id.* ¶¶ 24, 28. The van also held shipping records for two such rollers that had originated in Puerto Rico and were destined for the Bronx. *Id.* ¶ 24. Agramonte-Minaya told law enforcement officers that he was residing in the unit with his girlfriend. *Id.* ¶ 27. Law enforcement officers then executed a search of the unit, with Agramonte-Minaya's consent. *See id.*; *see also* Dkt. 1 ¶ 5. The search revealed that pieces of furniture in multiple rooms were covered up with plastic, windows were boarded up, and the entryway and kitchen to the unit contained power tools. PSR ¶ 27. That evidence was consistent with the unit being used to open up the rollers containing cocaine that were being delivered.

As the Government notes, these undisputed facts solidly supported the inferences that Agramonte-Minaya (1) had given Maisonet-Lopez access to the apartment before Aponte-Guzman arrived with the van; (2) permitted Aponte-Guzman to transport the cocaine-filled lawn rollers to the apartment; (3) was prepared to permit Maisonet-Lopez and/or Aponte-Guzman to bring the lawn rollers into the apartment; and (4) was prepared to use the apartment as the site to cut open those lawn rollers with power tools to retrieve the 460 kilograms of cocaine hidden inside. *See* G. Mem. at 14. The record thus supported the conclusion that Agramonte-Minaya "controlled access to, [and] activities at," the apartment, as contemplated by the Application Note, U.S.S.G. § 2D1.1 App. Note 17, and thus that he "maintained that premises for the purpose of manufacturing or distributing" cocaine, U.S.S.G. § 2D1.1(b)(12). It thus amply supported the parties' stipulation that the premises enhancement applied.

8

And Agramonte-Minaya would not have a factual basis to challenge the factual propositions recited above from the PSR or the inferences drawn from them that supported the enhancement. As Cecutti's affidavit attests, Agramonte-Minaya admitted to Cecutti that the apartment was his girlfriend's; that he traveled from Puerto Rico to New Jersey to visit her and that while in New Jersey, he resided in the apartment; that he was expecting to receive in New Jersey in late September 2021 a shipment of metal cylinders from Puerto Rico that contained a large quantity of cocaine; that his role included opening the cylinders using power tools; that at the direction of the leader of the drug operation, he planned to use the residence to cut open the cylinders; and that he had coordinated the delivery of the cylinders to the residence, covered the various pieces of furniture inside the residence with plastic, boarded the windows, and obtained power tools. *See* Cecutti Aff. ¶ 8. Agramonte-Minaya further admitted to Cecutti that two of his co-conspirators had arrived at the residence on September 29, 2021; that he permitted one to enter the residence before the other arrived in the van with the cocaine-filled cylinders; that the plan had been for the co-conspirators to unload the cylinders from the van and bring them into the residence where Agramonte-Minaya would cut them open; and that his co-conspirators were then to take the cocaine from the residence and distribute it. *See id.* ¶ 9. Agramonte-Minaya also admitted that he told law enforcement that day that he resided in the residence with his girlfriend and consented to a search of the residence. *See id.* When Cecutti interviewed Agramonte-Minaya's girlfriend during his investigation, she and her adult son confirmed that Agramonte-Minaya lived at the residence with her when he was in New Jersey. *See id.* ¶ 10.

Agramonte-Minaya suggests that the premises enhancement should not have applied because his primary residence was in Puerto Rico, not New Jersey. *See* Motion at 6. However, the enhancement, by its terms, is not limited to primary residences. And Agramonte-Minaya

9

does not cite authority—and the Court is unaware of any—requiring that a residence be a primary residence for the enhancement to apply. On the contrary, the Second Circuit has upheld the enhancement where the evidence supported that the defendant controlled access to the relevant premises, even though he lacked a possessory interest in the premises, and evidence found on the defendant's person indicated that his primary residence was elsewhere. *See United States v. Holley*, 638 F. App'x 93, 98 (2d Cir. 2016).

In these circumstances, Agramonte-Minaya does not have any basis to accuse his trial counsel of ineffectiveness based on the premises enhancement. The evidence adduced by the Government's investigation strongly supported that enhancement. And Cecutti independently investigated the issue, but his investigation confirmed the applicability of the enhancement. *See* Cecutti Aff. ¶¶ 8–10. Agramonte-Minaya does not articulate any viable scenario in which the premises enhancement would not have applied at his sentencing. And, as Cecutti attested, in reviewing the draft plea agreement with his client, he explained all aspects of the Guidelines analysis there, including that enhancement. *See id.* ¶ 14.

This aspect of the § 2255 motion is thus meritless. Agramonte-Minaya does not have a basis to claim either that his trial counsel's performance with respect to the enhancement was deficient or that any prejudice to him resulted. *See, e.g., Albanese v. United States*, 415 F. Supp. 2d 244, 250 (S.D.N.Y. 2005) (noting that "the Second Circuit has repeatedly rejected ineffective assistance claims where, as here, the petitioner in retrospect finds fault with the plea negotiated by counsel" and collecting cases); *Khawar v. United States*, No. 15 Civ. 5784, 10 Cr. 1082, 2016 WL 6270732, at *4 (S.D.N.Y. Oct. 26, 2016) (similar); *United States v. Young*, No. 18 Cr. 834-8 (PAE), 2022 WL 1651180, at *4 (S.D.N.Y. May 24, 2022) ("Young's claim that his counsel's performance in negotiating a plea that contained the Guideline stipulations which he now wishes

10

to repudiate fell, overall, below a minimum standard of reasonableness cannot be taken seriously.").

### 2. The Appellate Waiver

Agramonte-Minaya next claims that his trial counsel did not explain the significance of the appellate waiver provision in the plea agreement. *See* Motion at 5. The implication of this argument is that Agramonte-Minaya did not understand that he was forgoing the right to appeal sentences within or below the Guidelines range stipulated in the agreement.

That argument is baseless, for multiple reasons. First, Cecutti attested that he reviewed with Agramonte-Minaya the appellate waiver and how it functioned. *See* Cecutti Aff. ¶ 14. He further attested that his client "informed [hi]m that he understood all the terms of the agreement and wished to move forward with a change of plea proceeding rather than proceed to trial." *Id.* Second, at the plea proceeding, Agramonte-Minaya stated under oath that the agreement had been translated to him in full, that he had discussed it with Cecutti, and that he believed he understood the agreement at the time he signed it. *See* 6/3/22 Tr. at 16–17. Third, at the plea proceeding, the Government specifically described the waiver provision as barring an appeal of any sentence of 262 months or below, *see id.* at 17–18, and Agramonte-Minaya confirmed that he had heard that discussion, *see id.* at 19. Finally, in colloquy at the plea proceeding, the Court specifically discussed the appellate waiver provision with Agramonte-Minaya, and he confirmed that he understood it. *See id.* at 19 (Court: "Do you understand that under the agreement, you are giving up your right to appeal or otherwise challenge your sentence so long as I don't sentence you to more than 262 months in prison?" Agramonte-Minaya: "Yes."); *see also, e.g., Robinson v. United States*, No. 21 Civ. 786, 2021 WL 568171, at *5 (S.D.N.Y. Feb. 16, 2021) ("The representations of the defendant [and] his lawyer, . . . as well as any findings made by the judge accepting the plea constitute a formidable barrier in any subsequent collateral proceeding[] since

11

solemn declarations in open court carry a strong presumption of veracity." (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977))); *United States v. Geraldo*, 11 Cr. 1032-68 (PAE), 2021 WL 230282, at *5 (S.D.N.Y. Jan. 21, 2021) ("Allegations a defendant makes in a § 2255 petition 'cannot overcome his contrary statements under oath during a plea allocution, which must be given the presumptive force of truth.'" (quoting *Francisco v. United States*, 115 F. Supp. 3d 416, 420 (S.D.N.Y. 2015))).

### 3. Alternative Plea Terms

Agramonte-Minaya finally states that he might have negotiated a different plea agreement or proceeded to trial had his trial counsel not "induced" him to agree to an agreement containing the premises enhancement. Motion at 2. That unsupported and self-serving claim merits little weight, for several reasons.

First, it is contradicted by trial counsel's sworn affidavit. *See* Cecutti Aff. ¶¶ 11–15. Second, its premise that a plea agreement with superior terms was available is unsubstantiated and improbable, given the sound factual basis for each Guidelines adjustment to which the parties stipulated. And the agreement that trial counsel negotiated proved demonstrably beneficial to Agramonte-Minaya. By enabling him to plead to a 21 U.S.C. § 841(b)(1)(B) lesser-included offense carrying a 5-year mandatory minimum sentence rather than the offense charged in the indictment which carried a 10-year mandatory minimum sentence, trial counsel made possible the 108-month sentence that the Court imposed. Third, its alternative premise, that prevailing at trial was a viable option, is utter conjecture, given the formidable evidence of Agramonte-Minaya's guilt, as set out in the PSR. *See Blumenberg v. United States*, No. 5 Civ. 9416, 2009 WL 3459185, at *3 (S.D.N.Y. Oct. 27, 2009) ("Self-serving conclusory allegations . . . are insufficient to establish ineffective assistance of counsel." (citing *United States v. Torres*, 129 F.3d 710, 715–17 (2d Cir. 1997))); *Hernandez v. Larkin*, No. 12 Civ. 8090, 2013 WL

12

4453316, at *12 (S.D.N.Y. Aug 19, 2013) ("A self-serving post-conviction statement does not, standing alone, establish prejudice."); *see also, e.g., Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (court "must judge [counsel's] conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct,' and may not use hindsight to second-guess . . . strategy choices" (quoting *Strickland*, 466 U.S. at 690)).

The Court thus rejects this theory of ineffectiveness, too.

### C. Assessment of Agramonte-Minaya's Claim Under *Strickland*

As the assembled record, including counsel's affidavit recounting in detail his representation, reflects, Agramonte-Minaya's claim of ineffective assistance is baseless, factually and legally. Quite the contrary, Cecutti's representation was not only legally effective. It was, as the Court can attest, centrally responsible for his client's receiving a sentence materially below the recommendations of the Sentencing Guidelines, the Government, and the Probation Department. Thus, Agramonte-Minaya cannot establish either prong of the *Strickland* standard governing ineffective assistance claims.

As to counsel's performance, for the reasons above, Agramonte-Minaya's three theories why his trial counsel was purportedly ineffective are baseless. Counsel's approach and decisions in each area were well within the range of professional conduct. Agramonte-Minaya thus has not overcome the "strong presumption" that his counsel's conduct was reasonable. *Strickland*, 466 U.S. at 689. He has not come forward with anything to support that his counsel's conduct "fell below an objective standard of reasonableness." *Id.* at 688; *see also id.* at 689 ("Judicial scrutiny of counsel's performance must be highly deferential.").

On the contrary, the Court's assessment is that trial counsel Cecutti was *highly* effective. Confronted with evidence that effectively dictated his client's guilt and a quantity of cocaine that

13

unavoidably yielded a very high Guidelines range, he prudently negotiated a prompt—and fully informed—guilty plea that enabled his client to avoid a 10-year mandatory minimum sentence. He then presented a powerful sentencing package that, as reflected in the Court's sentencing remarks, contributed to the decision to impose a sentence far below the Guidelines range and below the 10-year minimum his client otherwise would have faced. *See* 11/17/22 Tr. at 32 (complimenting Cecutti's "outstanding, I might add, characteristically outstanding, sentencing submission," and noting that it enabled the Court "to see a different side of [Agramonte-Minaya]"); *see also, e.g., King v. United States*, No. 10 Cr. 122, 2017 WL 1483337, at *16 (S.D.N.Y. Apr. 25, 2017) ("The advice to plead guilty represented a strategic choice to reduce the petitioner's potential exposure in light of the copious amount of evidence against her to a maximum of 96 months' imprisonment, which was in fact less than the Sentencing Guidelines would have provided had it not been for the statutory maximum limiting the sentence."); *Nicholson v. United States*, No. 9 Cr. 414, 2014 WL 4693615, at *9 (S.D.N.Y. Sept. 22, 2014) (finding counsel's advice to enter plea agreement reasonable under *Strickland* where court later entered statutory maximum sentence, but petitioner avoided higher exposure from dismissed counts), *aff'd*, 638 F. App'x 40 (2d Cir. 2016); *Young*, 2022 WL 1651180, at *4 (similar).

As to prejudice, far from counsel's performance having harmed Agramonte-Minaya, counsel's work demonstrably benefited him. Given the evidence as canvassed in the PSR, there is no non-speculative basis to believe that Cecutti could have achieved a plea agreement with superior terms. And within that parameter, his skillful work—in persuading the Government to a agree to a plea to a lesser-included offense and in marshaling at sentencing the strongest possible arguments at sentencing—achieved a favorable outcome for Agramonte-Minaya. *See, e.g., Geraldo*, 2021 WL 230282, at *5 ("Geraldo thus cannot show prejudice even if counsel's

14

representations were deficient because the Court advised him about the consequences of his plea before accepting that plea, and he still chose to do so." (citation omitted)); *Marte v. United States*, No. 2 Cr. 1490, 2012 WL 2953723, at *6 (S.D.N.Y. July 20, 2012) (same); *Hsu v. United States*, 954 F. Supp. 2d 215, 221 (S.D.N.Y. 2013) (no prejudice where defendant "was aware of the range of sentencing possibilities he faced after pleading guilty"); *Guzman v. United States*, No. 13 Civ. 6806, 2015 WL 1137533, at *4 (S.D.N.Y. Mar. 12, 2015) (similar).

### D. Hearing

"In ruling on a motion under § 2255, the district court is required to hold a hearing '[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013) (quoting 28 U.S.C. § 2255). But "the filing of a motion pursuant to § 2255 does not automatically entitle the movant to a hearing; that section does not imply that there must be a hearing where the allegations are 'vague, conclusory, or palpably incredible.'" *Id.* (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)). "To warrant a hearing, the motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle him to relief." *Id.* at 131. "In determining whether the assertions in a § 2255 motion warrant discovery or a hearing, the court must also take into account admissions made by the defendant at his plea hearing." *Id.* "[S]ubsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *see also Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009) ("Bald allegations unsupported by evidentiary facts do not" require hearing); *Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001)

15

(court may "expand the record without conducting a full-blown testimonial hearing" through the use of affidavits).

Here, all of Agramonte-Minaya's claims are either conclusory, belied by the record, and/or insufficient (even if proven true) as a matter of law to secure relief. As a result, an evidentiary hearing is not warranted.

## CONCLUSION

For the reasons above, the Court denies Agramonte-Minaya's motion for relief pursuant to 28 U.S.C. § 2255 as meritless. Agramonte-Minaya has not made a substantial showing of a denial of a federal right, and appellate review is therefore not warranted. *See* 28 U.S.C. § 2253(c)(2); *Love v. McCray*, 413 F.3d 192, 195 (2d Cir. 2005). The Court also certifies that any appeal from this order would not be taken in good faith; therefore, *in forma pauperis* status is denied for purposes of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 445 (1962).

The Clerk of Court is respectfully directed to terminate the motion at docket 136.

SO ORDERED.

_____
Paul A. Engelmayer
United States District Judge

Dated: March 19, 2025
       New York, New York